# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

KALI ORFF, et al.,

                                        Plaintiffs,

v.

CITY OF IMPERIAL, et al.,

                                        Defendants.

Case No.:  17-CV-0116 W (AGS)

**ORDER:**

**(1) GRANTING DEFENDANT ANDREW SMITHSON'S MOTION TO DISMISS [DOC. 8]; AND**

**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF IMPERIAL AND MICHAEL COLON'S MOTION TO DISMISS [DOC. 7]**

        Pending before the Court are: (1) Defendant Andrew Smithson's Motion to Dismiss [Doc. 8]; and (2) Defendant City of Imperial and Michael Colon's Motion to Dismiss.  [Doc. 7.]  The first motion is unopposed.  [Doc. 9.]  The second is opposed. [Doc. 10.]  The Court decides the matters on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons that follow, the Court **GRANTS** the first motion and **GRANTS IN PART AND DENIES IN PART** the second.

//

//

1

## I. BACKGROUND

Plaintiff Kali Orff is a Detective with the Brawley Police Department. (*Compl.* [Doc. 1] ¶ 12.) Her wife, Plaintiff Michelle Kristol, is a Detective with the Ventura County Sheriff's Office. (*Id.*)

According to the Complaint, "[o]n or about January 31, 2016," Detective Orff attended a birthday party at a friend's home. (*Compl.* [Doc. 1] ¶ 13.) Along with several acquaintances, she stayed the night at that home. (*Id.* [Doc. 1] ¶¶ 13–14.) The Complaint alleges that Defendant Andrew Smithson, a U.S. Customs and Border Protection Agent who was dating one of her friends at the time, sexually assaulted Orff several hours after she went to bed. (*See id.* [Doc. 1] ¶ 14.) It alleges that upon being awakened by the assault, "Detective Orff punched her attacker in the face, called 911, and reported the sexual battery to the responding officers of [the Imperial Police Department]." (*Id.* [Doc. 1] ¶ 15.) Orff was then evaluated at Pioneers Memorial Hospital. (*Id.* [Doc. 1] ¶ 16.)

The Complaint alleges that Defendant Smithson confessed to the assault. (*Compl.* [Doc. 1] ¶ 19.) Nevertheless, it alleges, "[the Imperial Police Department] made no attempt to determine the assailant's blood alcohol content or to gather any biological evidence" from him. (*Id.* [Doc. 1] ¶ 18.) Moreover, the Complaint alleges that "[f]ollowing the assault, [the Imperial Police Department] failed to submit Detective Orff's case to the District Attorney's office for over 100 days." (*Id.* [Doc. 1] ¶ 20.) Ultimately, according to the Complaint, "the District Attorney's Office declined to prosecute, citing an unknown level of intoxication of the assailant." (*Id.* [Doc. 1] ¶ 25.) It alleges, "[t]o date, . . . Smithson has not been charged with any crime, and [he] remains free to work in a position of authority on the United States border[.]" (*Id.* [Doc. 1] ¶ 19.)

The Complaint further alleges that Defendant Michael Colon, Chief of the Imperial Police Department, "made an active effort to interfere with the case." (*Compl.* [Doc. 1] ¶ 20.) According to the Complaint, "[s]hortly after the assault," Chief Colon "called Detective Orff's boss at the Brawley Police Department . . . and gave him the details of

Orff's sexual assault." (*Id.* [Doc. 1] ¶ 21.)  During that call, Chief Colon allegedly "blamed Orff for being victimized" and "accused Orff of being immoral because of her sexual orientation." (*Id.*)  Thereafter, "on or about May 16, 2016, Detective Orff's wife, Detective Kristol, contacted [the Imperial Police Department] to get an explanation as to why Detective Orff's case had not been submitted to the District Attorney." (*Id.* [Doc. 1] ¶ 22.)  "In response, Chief Colon contacted Detective Kristol's boss, and began to divulge details of Detective Orff's assault to him and to attack Detective Orff's character and fitness as an officer." (*Id.*)

The Complaint asserts eleven causes of action: (1) violation of 42 U.S.C. § 1983 against Chief Colon and Doe Defendants; (2) violation of 42 U.S.C. § 1983 against the Imperial Police Department and the City of Imperial; (3) violation of Cal. Civ. Code § 51(b) and 52(a); (4) violation of Cal. Civ. Code § 52.1; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) public disclosure of private facts; (8) false light; (9) defamation; (10) sexual battery; and (11) battery. (*Compl.* [Doc. 1].)

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss for Lack of Standing

The Court must dismiss a cause of action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)).  Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." See Lujan v. Defs. of Wildlife, 504 U.S. 555, 559 (1992).  This limitation forms "the core component of standing[,]" a doctrine that ensures federal courts decide only those cases "that are of the justiciable sort referred to in Article III[,]" those that are " 'appropriately resolved

3

through the judicial process[.]' " Id. (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).

As an "irreducible constitutional minimum[,]" standing is a fundamental part of every federal case, a limitation on their subject matter jurisdiction. See Chandler, 598 F.3d at 1122; Lujan, 504 U.S. at 560. It consists of three elements—all of which the party asserting federal jurisdiction must establish: (i) injury; (ii) causation; and (iii) redressability. See id.

> **First, the plaintiff must prove that he suffered an "injury in fact", i.e., an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."**

> **Second, the plaintiff must establish a causal connection by proving that [his] injury is fairly traceable to the challenged conduct of the defendant.**

> **Third, the plaintiff must show that [his] injury will likely be redressed by a favorable decision.**

Chandler, 598 F.3d at 1122 (quoting and citing Lujan, 504 U.S. at 560–61).


**B.      Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to

17-CV-0116 W (AGS)

relief above the speculative level[.]" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. <u>See</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

### C. Motion to Strike Pursuant to Rule 12(f)

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The court may act . . . on its own[,] or . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." <u>Id.</u> " 'The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . .' " <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010) (quoting <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by* 510 U.S. 517 (1994)). Motions to strike are generally disfavored and are "usually . . . denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." <u>See</u> <u>Travelers Cas. & Sur. Co. of Am. v. Dunmore</u>, 2010 WL 5200940, at *3 (E.D. Cal. 2010).

Redundant matter is the needless repetition of assertions. <u>See</u> <u>Dunmore</u>, 2010 WL 5200940, at *3. " 'Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead.' " <u>Whittlestone</u>, 618 F.3d at 974 (quoting <u>Fogerty</u>, 984 F.2d at 1527). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." <u>Id.</u> (internal

5

quotation omitted). "Scandalous matters are allegations that unnecessarily reflect . . . on the moral character of an individual or state . . . anything in repulsive language that detracts from the dignity of the court." <u>Consumer Solutions REO, LLC v. Hillery</u>, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (quoting <u>Corbell v. Norton</u>, 224 F.R.D. 1, 5 (D.D.C. 2004)).

## III.   DISCUSSION

### A.   Smithson's Unopposed Motion to Dismiss Will be Granted.

As a Preliminary matter, Plaintiffs do not oppose Defendant Andrew Smithson's motion to dismiss the fifth and sixth causes of action against him as to Plaintiff Kristol, for intentional infliction of emotional distress and negligent infliction of emotional distress, respectively. (*Smithson Mot.* [Doc. 8]; *Pls.' Non-opp'n* [Doc. 9].) Good cause appearing, Smithson's motion will be granted.

### B.   Plaintiff Kristol and Article III Standing

Defendants City of Imperial and Miguel Colon contend that Plaintiff Kristol lacks standing to pursue her causes of action. (*Defs.' Mot.* [Doc. 7-1] 14:27–15:7.)

As noted above, to show the existence of Article III standing, "the plaintiff must prove that [she] suffered an 'injury in fact', i.e., an 'invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' " <u>Chandler</u>, 598 F.3d at 1122 (quoting and citing <u>Lujan</u>, 504 U.S. at 560–61).

The Complaint asserts the first and second causes of action, for violation of 42 U.S.C. § 1983, and the fifth and sixth causes of action, for intentional and negligent infliction of emotional distress, respectively, on behalf of Detective Kristol. (*Compl.* [Doc. 1] ¶¶ 27–38, 52–67.)

//
//

### 1. First and Second Causes of Action

As to the first and second causes of action, for violation of § 1983, the Complaint does not allege a clear theory as to how Defendants' conduct violated Detective Kristol's constitutional rights, as opposed to those of her wife. Even the telephone call to Detective Kristol's supervisor following her May 16, 2016 inquiry is alleged to have focused on the details of her wife's assault, and on her wife's "character and fitness as an officer"—not on her own. (*See Compl.* [Doc. 1] ¶ 22.) The Court does not decide at this time whether Detective Kristol suffered a constitutional injury that could confer standing to assert a § 1983 cause of action—only that the Complaint as drafted does not sufficiently allege facts to support such an injury.

The first and second causes of action will be dismissed with leave to amend as to Plaintiff Kristol for lack of Article III standing. [1]

### 2. Fifth and Sixth Causes of Action

As to the fifth and sixth causes of action, for intentional and negligent infliction of emotional distress, respectively, Plaintiffs adequately allege that Detective Kristol suffered emotional harm as a result of Chief Colon's discussion of the details of her wife's sexual assault case with her own supervisor. (*See Compl.* [Doc. 1] ¶¶ 53, 62–63.) This is sufficient injury to confer Article III standing. See Chandler, 598 F.3d at 1122. As to causes of action grounded in violations of California state tort law, "[t]he doctrine of respondeat superior applies to public and private employers alike." Mary M. v. City of Los Angeles, 54 Cal. 3d 202, 209 (1991). Thus, Plaintiffs have also alleged causation and redressability against all defendants as to these causes of action. See id.; Chandler, 598 F.3d at 1122.

---

[1] "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15.

17-CV-0116 W (AGS)

Defendants' motion to dismiss the fifth and sixth causes of action as to Plaintiff Kristol for lack of standing is denied.

### C.     42 U.S.C. § 1983

Defendants City of Imperial and Miguel Colon move to dismiss the first and second causes of action, for violation of 42 U.S.C. § 1983.  (*Defs.' Mot.* [Doc. 7-1] 3:4–7:2.)  Plaintiffs oppose.  (*Pls.' Opp'n* [Doc. 10] 3:21–8:1.)

#### 1.     The First Cause of Action—Defendant Colon
##### a)     Discrimination

First, Defendants contend that the Complaint does not adequately allege a violation of the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments because "there is no constitutional right to an adequate police investigation."  (*Defs.' Mot.* [Doc. 7-1] 3:4–5:4 (citing Gomez v. Whitney, 757 F.2d 1005 (9th Cir. 1985).)  Plaintiffs, on the other hand, argue that their § 1983 Due Process and Equal Protection causes of action are not grounded in inadequate investigation, but rather a theory of discrimination on the basis of Detective Orff's sexual preferences.  (*Pls.' Opp'n* [Doc. 10] 3:22–6:3.)

There is no constitutional right to an adequate police investigation.  See Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985).  "There is a constitutional right, however, to have police services administered in a nondiscriminatory manner—a right that is violated when a state actor denies . . . protection to disfavored persons."  See Estate of Macias v. Ihde, 219 F.3d 1018, 1028 (9th Cir. 2000) (internal citation omitted).

The Complaint does not clearly allege a discrimination theory.  Rather, it seems to ground its allegations of wrongdoing as to Chief Colon's official duties in terms of his interference with the course of the investigation and prosecution of the Orff matter.  (*See, e.g.*, *Compl.* [Doc. 1] ¶ 29 ("Officer Defendants . . . deprived Plaintiffs of rights . . . by interfering with the prosecution of the sexual assault to which Detective Orff was

8

subjected . . . .").)  Plaintiffs urge the Court to read a discrimination theory between the lines—based on the slow pace of the investigation, combined with allegedly discriminatory remarks Chief Colon made in two phone calls.  (*See, e.g.*, *Pls.' Opp'n* [Doc. 10] 5:2–17.)  This the Court cannot do.  The Complaint simply does not allege the relevant theory.  Defendants are entitled to "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8.  If Plaintiffs' theory is that discrimination caused the investigatory delay, the Complaint must allege as much.  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570 (summarizing the relevant pleading standards).

The Complaint does not allege a viable claim as to how Chief Colon's alleged interference with either the investigation or the prosecution of Detective Orff's case amounts to a constitutional violation.  Accordingly, the Due Process and Equal Protection claims within the first cause of action will be dismissed with leave to amend as to Plaintiff Orff.

### b)    Violation of Privacy

Second, Defendants contend that the "the alleged acts of Chief Colon [do not] amount to a violation of any right of privacy."  (*Defs.' Mot.* [Doc. 7-1] 5:5–7:2.)  This line of argument is misguided.

The Fourteenth Amendment protects "the individual interest in avoiding disclosure of personal matters."  Whalen v. Roe, 429 U.S. 589, 599, 599 n.25 (1977).  "[T]he security of one's privacy against arbitrary intrusion by the police is basic to a free society and is therefore 'implicit in the concept of ordered liberty,' embraced within the Due Process Clause of the Fourteenth Amendment."  York v. Story, 324 F.2d 450, 455 (9th Cir. 1963) (citing Wolf v. Colorado, 338 U.S. 25, 27 (1949), *overruled on other grounds by* Mapp v. Ohio, 367 U.S. 643 (1961)).  The Constitution shields the privacy of one's sexual activities.  See Thorne v. City of El Segundo, 726 F.2d 459, 468 (9th Cir. 1983) (internal citations omitted).  "The desire to shield one's unclothed figured from view of

9

strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." <u>York</u>, 324 F.2d at 455.

> **[A] historic social stigma has attached to victims of sexual violence. In particular, a tradition of "blaming the victim" of sexual violence sets these victims apart from those of other violent crimes. Releasing the intimate details of rape will therefore not only dissect a particularly painful sexual experience, but often will subject a victim to criticism and scrutiny concerning her sexuality and personal choices regarding sex.**

<u>Bloch v. Ribar</u>, 156 F.3d 673, 685 (6th Cir. 1998).

Defendants analogize to <u>Davis v. Bucher</u>, 853 F.2d 718 (9th Cir. 1988), in arguing that the Complaint implicates no privacy issue of constitutional import. (*Compl.* [Doc. 7-1] 5:5–7:2.) In <u>Davis</u>, an inmate in the custody of Washington state sued a state correctional officer for violation of § 1983. The inmate had brought several nude photographs of his wife into the prison. Upon a move from one part of the prison to another, the inmate's possessions were inventoried. At that point, the correctional officer found the photographs and "exhibited [them] to at least two inmates before replacing them." <u>Id.</u> at 719. He later made remarks to the desk sergeant about the inmate's wife's anatomy, which at least one guard and one inmate overheard. <u>Id.</u>

The court held that the correctional officer's "indiscretions [did] not constitute the type of governmental abuse which demands a constitutional response." <u>Davis</u>, 853 F.2d at 721. It counseled discretion in circumscribing § 1983, lest the statute begin to displace state tort law—with courts branding every tort committed by a state actor as a constitutional harm. <u>See id.</u> at 720. The court noted the fact that the inmate himself had brought the photos into the prison environment, thereby "presenting an inherent risk of disclosure and a cognizable diminution in [the inmate's] reasonable expectations of privacy." <u>Id.</u> It characterized the correctional officer's conduct as "two isolated instances of poor judgment"—"tasteless, unwise, and unwarranted[,]" but not an "aggravated abuse of authority . . . warranting the displacement of state tort law as the appropriate, and exclusive, vehicle of redress." <u>See id.</u> at 720–21 (internal citations omitted).

Several factors distinguish the instant case from <u>Davis</u>.  First, whereas the inmate in <u>Davis</u> assumed some risk of disclosure by choosing to bring private images into a prison environment, the Complaint does not allege that Detective Orff took any analogous steps.  She was the victim of a sexual assault.  She is entitled to privacy surrounding the details of that assault, lest she suffer the "historic social stigma has attached to victims of sexual violence[,]" subjecting her to "criticism and scrutiny concerning her sexuality and personal choices regarding sex."  <u>See</u> <u>Bloch</u>, 156 F.3d at 685.  Second, the alleged disclosure of the details of Detective Orff's assault was not limited to an enclosed environment like a prison, but was instead purposefully directed at the victim's direct supervisor, and at the supervisor of the victim's wife.[2]  (*See Compl.* [Doc. 1] ¶¶ 21–22.)  Third, and on a related note, the allegation that Chief Colon directed his disclosure at the supervisors of the victim and her spouse gives rise to an implication of malice, changing the character of the conduct alleged from isolated indiscretions to an "aggravated abuse of authority."  <u>See</u> <u>Davis</u>, 853 F.2d at 720–21.

For the reasons stated above, Defendants' motion to dismiss the violation of privacy claim within the first cause of action will be denied.

### 2. The Second Cause of Action—<u>Monell</u> Liability

Defendants move to dismiss the second cause of action, for violation 42 U.S.C. § 1983 against the Imperial Police Department and the City of Imperial per <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658 (1978), on the ground that it does not meet the pleading standard of Rule 8.  (*Defs.' Mot.* [Doc. 7-1] 12:11–14:25.)

The Complaint alleges the following, in relevant part, as to municipal § 1983 liability:

_____

[2] Defendants urge the Court to construe "law enforcement" as a limited environment analogous to the prison in <u>Davis</u>, despite the fact that Chief Colon's alleged disclosure spanned three such agencies across as many distinct jurisdictions.  (*See Defs.' Mot.* [Doc. 7-1] 6:16–7:2.)  They present no authority that would support such an interpretation.

1
2
3

> **Defendants City of Imperial and Imperial Police Department knowingly, with gross negligence, and in deliberate indifference to the Constitutional rights of citizens, maintain and permit and official policy and custom of permitting the occurrence of the types of wrongs set forth hereinabove and hereafter.**

4
5
6
7

> **These policies and customs include, but are not limited to, the deliberately indifferent training of law enforcement officers in the mishandling of criminal cases to be prosecuted, the misuse of confidential information that officers come to know in the exercise of their law enforcement duties, the ratification of police misconduct, and the failure to conduct adequate unbiased investigations of police misconduct such that future violations do not occur.**

8
9
10
11
12

(*Compl.* [Doc. 1] ¶¶ 34–35 (paragraph number omitted).)  The Complaint does not allege in what manner the law enforcement officers are poorly trained, how confidential information is misused, how police misconduct is ratified, or how any of this alleged malfeasance caused injury to Detective Orff.  This falls far short of satisfying Rule 8.  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.

13
14

The second cause of action will be dismissed with leave to amend as to all defendants.[3]

15
16

### D.    The Cal. Civ. Code § 51(b) Cause of Action

17
18
19
20

Defendants move to dismiss the third cause of action in the Complaint, for violation of Cal. Civ. Code §§ 51(b) and 52(a), on the ground that the statute does not apply because the Imperial Police Department does not fall within the statutory definition of "business establishment."  (*See Defs.' Mot.* [Doc. 7-1] 7:3–12.)

21
22
23
24

> **(b) All persons within the jurisdiction of [California] are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.**

25
26
27
28

---

[3] The same reasoning applies to both the City of Imperial and the Imperial Police Department.

Cal. Civ. Code § 51. Section 51 reaches " 'all business establishments of every kind whatsoever.' " Curran v. Mount Diablo Council of the Boy Scouts, 17 Cal. 4th 670, 696 (1998) (quoting Cal. Civ. Code § 51). "[T]he term 'business establishments' must properly be interpreted 'in the broadest sense reasonably possible.' " Id. (quoting Burks v. Poppy Const. Co., 57 Cal. 2d 463, 468 (1962)). However, the term is not to be interpreted to include organizations "whose formation and activities are unrelated to the promotion or advancement of the economic or business interests of its members." See id. at 697. A public entity "is not a business establishment within the meaning of section 51 unless it engages in behavior involving sufficient 'businesslike attributes.' " See Carter v. City of Los Angeles, 224 Cal. App. 4th 808, 825 (internal citation omitted). "[A]n entity providing sidewalks and curbs to its citizens does so as a public servant, not a commercial enterprise." Id.; see also Qualified Patients Ass'n v. City of Anaheim, 187 Cal. App. 4th 734, 765 (2010) (declining to apply section 51 to the actions of a city's legislative body); Burnett v. San Francisco Police Dep't, 36 Cal. App. 4th 1177, 1192 (1995) (declining to apply section 51 to the ordinance of a city's legislative body, or to the allegedly age-discriminatory actions of a police chief and police department in enforcing that ordinance).

In Curran, the California Supreme Court declined to extend the contours of the Unruh Act to cover "the membership policies or decisions" of a Boy Scouts council, "an expressive social organization whose primary function is the inculcation of values in its youth members, and whose small social group structure and activities are not comparable to those of a traditional place of public accommodation or amusement." See 17 Cal. 4th at 699. The Court focused on the limited scope of the commercial activity conducted by the group, emphasizing that "the business transactions with nonmembers engaged in by the Boy Scouts do *not* involve the sale of access to the basic activities or services offered by the organization." Id. at 700. The Court held:

//

//

13

**[W]e have no doubt that the [Unruh Act] would apply to . . . the actual business transactions with nonmembers engaged in by the Boy Scouts in its retail stores and elsewhere . . . we conclude that such transactions do not render the Boy Scouts a business establishment so as to bring its membership within the reach of the [Unruh Act]. Those business transactions are distinct from the Scouts' core functions and *do not demonstrate that the organization has become a commercial purveyor of the primary incidents and benefits of membership in the organization.***

Id. (emphasis added).

Plaintiff urges the Court to construe a police department as a business establishment within the ambit of section 51. (*See Pls.' Opp'n* [Doc. 10] 8:23–10:23.) Such a decision would contradict both the plain meaning of the statutory language and compelling authority from the California Supreme Court and the California Courts of Appeal interpreting that language. Curran, 17 Cal. 4th at 700; Carter, 224 Cal. App. 4th at 825; Qualified Patients Ass'n, 187 Cal. App. 4th at 765; Burnett, 36 Cal. App. 4th at 1192. A police department is unrelated to the promotion or advancement of economic or business interests. See Curran, 17 Cal. 4th at 697. It is not a business establishment.

The third cause of action will be dismissed without leave to amend.

### E.    The Cal. Civ. Code § 52.1 Cause of Action

Defendants move to dismiss Plaintiffs' fourth cause of action, for violation of the Bane Act, Cal. Civ. Code § 52.1, on the ground that the Complaint does not allege the coercive conduct necessary to sustain such a cause of action. (*Defs.' Mot.* [Doc. 7-1] 7:13–26.)

//
//
//
//
//
//
//

14

**(a) If a person or persons, whether or not acting under color of law, interferes** *by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion,* **with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . .**

**(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).**

Cal. Civ. Code § 52.1 (emphasis added).

Coercion is "[c]ompulsion of a free agent by physical, moral, or economic force or threat of physical force[.]" COERCION, BLACK'S LAW DICTIONARY (10th ed. 2014). Moral coercion, or undue influence, is defined as "[t]he improper use of power or trust in a way that deprives a person of free will and substitutes another's objective; the exercise of enough control over another person that a questioned act by this person would not have otherwise been performed, the person's free agency having been overmastered." UNDUE INFLUENCE, Black's Law Dictionary (10th ed. 2014).

Plaintiffs allege:

**Defendant Chief Colon's interference with Detective Orff's rights violated Civil Code section 52.1 because (1) Defendant Chief Colon unfairly refused to forward Detective Orff's case to the District Attorney in violation of Chief Colon's duty as a law enforcement officer, and (2) because Defendant Chief Colon violated Detective Orff's right to privacy and dignity by attempting to coerce Defendant Orff's commanding officer into terminating Detective Orff through Defendant Chief Colon's allegations that Detective Orff was unfit for duty.**

(*Compl.* [Doc. 1] ¶ 50.) The Bane Act cause of action contains no further allegations as to coercive conduct, threats, intimidation, or attempts thereof, on the part of Chief Colon. In essence, the Complaint premises Bane Act liability on the basis that Chief Colon: (1) improperly refused to forward the case to the District Attorney; and (2) somehow tried to coerce the victim's superior by calling him on the phone, disclosing details of the sexual

15

assault, and impugning Detective Orff's moral character. (*See id.* [Doc. 1] ¶¶ 21, 47–51.) None of these allegations add to a plausible theory as to how Chief Colon compelled "a free agent by physical, moral, or economic force or threat of physical force." <u>See</u> COERCION, BLACK'S LAW DICTIONARY (10th ed. 2014) <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 570.

The fourth cause of action will be dismissed with leave to amend.

### F. Remaining State-law Causes of Action and § 821.6 Immunity

Defendants argue that all remaining state-law causes of action against Chief Colon should be dismissed because Cal. Gov. Code § 821.6 immunizes him from liability. (*See Defs.' Mot.* [Doc. 7-1] 7:27–10:2.)

"A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6. "Government tort immunity is jurisdictional[.]" <u>Richardson-Tunnell v. Sch. Ins. Program for Employees (SIPE)</u>, 157 Cal. App. 4th 1056, 1061 (2007). "Section 821.6 immunity applies only to conduct within the scope of employment. An employee is acting in the course and scope of his employment when he is engaged in work he was employed to perform, or when the act is incident to his duty and is performed for the benefit of his employer, not to serve his own purposes or convenience." <u>Id.</u> at 1062. " 'California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits.' " <u>Id.</u> (quoting <u>Gillan v. City of San Marino</u>, 147 Cal. App. 4th 1033, 1048 (2007)).

"[S]ection 821.6 is not limited to suits for damages for malicious prosecution, although that is a principal use of the statute." <u>Kayfetz v. State of California</u>, 156 Cal. App. 3d 491, 497 (1984). " '[T]he test of immunity is not the timing of the publication [of allegedly defamatory statements] but whether there is a causal relationship between

16

the publication and the prosecution process.  If the making and publication of . . . statements were part of the process, they [are] protected by the immunity in section 821.6.' "  Ciampi v. City of Palo Alto, 790 F. Supp. 2d 1077, 1108–09 (N.D. Cal. 2011) (quoting Ingram v. Flippo, 74 Cal. App. 4th 1280, 1292–93 (1999)).  "Under California law the immunity statute is given an 'expansive interpretation' in order to best further the rationale of the immunity, that is to allow the free exercise of the prosecutor's discretion and protect public officers from harassment in the performance of their duties."  Ingram, 74 Cal. App. 4th at 1292 (internal quotation omitted).

The fifth and sixth causes of action allege liability through interference with or a failure of the investigative process.  (See Compl. [Doc. 1] ¶¶ 53, 62, 64.)  Furthermore, all remaining state-law causes of action against Chief Colon contain an allegation that Colon disclosed details of Detective Orff's sexual assault to her superior.  (Compl. [Doc. 1] ¶¶ 53, 63, 69, 76, 82.)  These causes of action—the fifth, sixth, seventh, eighth, and ninth— also incorporate paragraph 21 of the Complaint, which contains the following language:

> **Shortly after the sexual assault, Chief Colon called Detective Orff's boss at the Brawley Police Department, and gave him the details of Orff's sexual assault. During his conversation with Orff's boss, Chief Colon also accused Orff of being immoral because of her sexual orientation.  He further blamed Orff for being victimized . . . .**

(Compl. [Doc. 1] ¶ 21.)

As a preliminary matter, Chief Colon's alleged interference with the Orff investigation—and the resulting slow progress of that investigation—would appear to be causally connected to the prosecution of her case.  (See Compl. [Doc. 1] ¶¶ 53, 62, 64.) See Cal. Gov. Code § 821.6; Ciampi, 790 F. Supp. 2d at 1108–09; Ingram, 74 Cal. App. 4th at 1292–93; Iqbal, 556 U.S. at 678.  Thus, Chief Colon is immune from resulting tort liability.  See Cal. Gov. Code § 821.6.

Claims within the fifth and sixth causes of action premised on Chief Colon's interference with the prosecution of the Orff matter will be dismissed with leave to amend.

//

17

In order for Chief Colon to be liable for his call to Detective Orff's supervisor, the call must have no causal link with the prosecution process. See Cal. Gov. Code § 821.6; Ciampi, 790 F. Supp. 2d at 1108–09; Ingram, 74 Cal. App. 4th at 1292–93. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Chief Colon allegedly chose to call Detective Orff's supervisor at work, to disclose intimate details of the sexual assault to which she had been subjected, to accuse her of being immoral because of her sexual preferences, and then to blame her for being the victim of a crime. (*See Compl.* [Doc. 1] ¶ 21.) The Court must assume these allegations true at this stage of the proceedings. Iqbal, 556 U.S. at 678. Given the foregoing, it is reasonable to infer that the call was not caused by the prosecution of the case. See id.; Cal. Gov. Code § 821.6.

Defendants' motion to dismiss Plaintiffs' fifth, sixth, seventh, eighth, and ninth causes of action will otherwise be denied.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

### G.    Motion to Dismiss Punitive Damages Prayer

Defendants move to dismiss[4] Plaintiffs' punitive damages prayer on the ground that it does not comply with a particularity pleading standard followed by California courts interpreting Cal. Civ. Code § 3294.  This is not the standard applicable to pleading a cause of action in federal court.

> **(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.**

Cal. Civ. Code § 3294.  " 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).

Federal courts sitting in diversity apply state substantive law and federal procedural law.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 76–80 (1938).  Federal Rules

---

[4] Defendants do not specify the vehicle by which they challenge Plaintiffs' punitive damages prayer. (*Defs.' Mot.* [Doc. 7-1] 10:3–11:26.)  The Ninth Circuit has held that a motion to strike per Rule 12(f) is not a proper means by which to seek to eliminate an improper damages prayer.  See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973–74 (9th Cir. 2010).

Federal Rule of Civil Procedure 12(f) allows the Court to strike "immaterial" or "impertinent" matter appearing in a complaint.  Fed. R. Civ. P. 12(f).

However, in Whittlestone, the Ninth Circuit lent these terms a narrow interpretation.  See 618 F.3d at 973–74.  According to the Whittlestone court, not even a finding that state law precluded certain items of damages would render a prayer for those items immaterial or impertinent so as to allow a court to strike it.  Id. ("[T]he claim for [lost profits and consequential] damages is not immaterial, because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief . . . . [T]he claim for [lost profits and consequential] damages is not impertinent, because whether these damages are recoverable pertains directly to the harm being alleged.").  Instead, the Whittlestone court interpreted a damages prayer as a "claim for relief" within the meaning of Rule 12(b)(6), implying that the availability of Rule 12(f) to strike such a "claim" would "be creating redundancies within the Federal Rules of Civil Procedure."  See Whittlestone, 618 F.3d at 974.

Per Whittlestone, the Court interprets Defendants' challenge to Plaintiffs' punitive damages prayer as a motion to dismiss pursuant to Rule 12(b)(6).

of Civil Procedure 8 and 9 control how a plaintiff must plead a prayer for punitive damages pursuant to California law in United States District Court. "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

California courts employ a different, heightened procedural requirement for pleading punitive damages per the substantive component of Cal. Civ. Code § 3294. See, e.g., Smith v. Superior Court, 10 Cal. App. 4th 1033, 1041–42 (1992). This requirement "irreconcilably conflicts with Rules 8 and 9 of the Federal Rules of Civil Procedure" and does not apply in federal court. See Clark v. Allstate Ins. Co., 106 F. Supp. 2d 1016, 1018–19 (S.D. Cal. 2000); Alejandro v. ST Micro Elecs., Inc, 129 F. Supp. 3d 898, 917 (N.D. Cal. 2015); Rees v. PNC Bank, N.A., 308 F.R.D. 266, 273 (N.D. Cal. 2015).

Plaintiffs allege that Chief Colon placed phone calls to the direct supervisor of a victim of a sexual assault—and to the direct supervisor of the victim's wife—during which he divulged details of that assault and impugned the victim's morality. (*See Compl.* [Doc. 1] ¶¶ 21–22.) This is sufficient to allow the Court to draw a plausible inference that Chief Colon intended to harm Detective Orff. See Cal. Code Civ. Proc. § 3294(c)(1) (defining malice); Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.

Defendants' motion to dismiss Plaintiffs' prayer for punitive damages will be denied.

//
//
//
//
//
//
//
//

## IV. CONCLUSION & ORDER

For the reasons stated above, Defendant Smithson's unopposed motion to dismiss the fifth and sixth causes of action against him as to Plaintiff Kristol only is **GRANTED**. [Doc. 8.] Per the terms of that unopposed motion, the fifth and sixth causes of action against Defendant Smithson by Plaintiff Kristol are dismissed without leave to amend.

The motion to dismiss filed by Defendants Colon and City of Imperial is **GRANTED IN PART AND DENIED IN PART**. [Doc. 7.] Specifically:

The first and second causes of action are dismissed with leave to amend as to Plaintiff Kristol for lack of Article III standing.

The Due Process and Equal Protection claims within the first cause of action are dismissed with leave to amend as to Plaintiff Orff.

The second cause of action is dismissed with leave to amend as to Plaintiff Orff.

The third cause of action is dismissed without leave to amend.

The fourth cause of action is dismissed with leave to amend.

Any claims within the fifth and sixth causes of action premised on Chief Colon's interference with the prosecution of the Orff matter are dismissed with leave to amend.

The motion filed by Defendants Colon and City of Imperial is otherwise denied.

Plaintiffs will have leave to amend, as described herein. If they elect to file an amended complaint in compliance with the terms of this order, they may do so on or before **Monday, June 26, 2017**.


**IT IS SO ORDERED.**


Dated: June 12, 2017

Hon. Thomas J. Whelan
United States District Judge