# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

KALI ORFF, et al.,

                              Plaintiffs,

v.

CITY OF IMPERIAL, et al.,

                              Defendants.

Case No.:  17-CV-0116 W (AGS)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. 14]**

Pending before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) brought by Defendants City of Imperial and Miguel Colon.  The Court decides the matters on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion.

//

//

//

//

# I. BACKGROUND

Plaintiff Kali Orff is a Detective with the Brawley Police Department. (*FAC* [Doc. 13] ¶ 13.) Her wife, Plaintiff Michelle Kristol, is a Detective with the Ventura County Sheriff's Office. (*Id.*)

According to the First Amended Complaint ("FAC"), "[o]n or about January 31, 2016," Detective Orff attended a birthday party at a friend's home. (*FAC* [Doc. 13] ¶ 14.) Along with several acquaintances, she stayed the night at that home. (*Id.* [Doc. 13] ¶ 14.) The FAC alleges that Defendant Andrew Smithson, a U.S. Customs and Border Protection Agent who was dating one of her friends at the time, sexually assaulted Orff several hours after she went to bed. (*See id.* [Doc. 13] ¶ 15.) It alleges that upon being awakened by the assault, "Detective Orff punched her attacker in the face, called 911, and reported the sexual battery to the responding officers of [the Imperial Police Department]." (*Id.* [Doc. 13] ¶ 16.) Orff was then evaluated at Pioneers Memorial Hospital. (*Id.* [Doc. 13] ¶ 17.)

The FAC alleges that Defendant Smithson confessed to the assault. (*FAC* [Doc. 13] ¶ 20.) Nevertheless, it alleges, "[the Imperial Police Department] made no attempt to determine the assailant's blood alcohol content or to gather any biological evidence" from him. (*Id.* [Doc. 13] ¶ 19.) Moreover, the FAC alleges that "[f]ollowing the assault, [the Imperial Police Department] failed to submit Detective Orff's case to the District Attorney's office for over 100 days." (*Id.* [Doc. 13] ¶ 21.) Ultimately, according to the FAC, "the District Attorney's Office declined to prosecute, citing an unknown level of intoxication of the assailant." (*Id.* [Doc. 13] ¶ 27.) It alleges, "[t]o date, . . . Smithson has not been charged with any crime, and [he] remains free to work in a position of authority on the United States border[.]" (*Id.* [Doc. 1] ¶ 20.)

The FAC further alleges that Defendant Michael Colon, Chief of the Imperial Police Department, "made an active effort to interfere with the case." (*FAC* [Doc. 1] ¶ 21.) According to the FAC, "[s]hortly after the assault," Chief Colon "called Detective Orff's boss at the Brawley Police Department . . . and gave him the details of Orff's

2

sexual assault." (*Id.* [Doc. 1] ¶ 22.) During that call, Chief Colon allegedly "blamed Orff for being victimized" and "accused Orff of being immoral because of her sexual orientation." (*Id.*) Thereafter, "on or about May 16, 2016, Detective Orff's wife, Detective Kristol, contacted [the Imperial Police Department] to get an explanation as to why Detective Orff's case had not been submitted to the District Attorney." (*Id.* [Doc. 1] ¶ 24.) "In response, Chief Colon contacted Detective Kristol's boss, and began to divulge details of Detective Orff's assault to him and to attack Detective Orff's character and fitness as an officer." (*Id.*)

The First Amended Complaint asserts nine causes of action: (1) violation of 42 U.S.C. § 1983 against Chief Colon and Doe Defendants by Plaintiff Orff; (2) violation of 42 U.S.C. § 1983 against the Imperial Police Department and the City of Imperial by Plaintiff Orff; (3) intentional infliction of emotional distress against all Defendants by Plaintiff Orff, and against the Imperial Police Department, City of Imperial, Chief Colon, and Doe Defendants by Plaintiff Kristol; (4) negligent infliction of emotional distress against all Defendants by Plaintiff Orff, and against the Imperial Police Department, City of Imperial, Chief Colon, and Doe Defendants by Plaintiff Kristol; (5) public disclosure of private facts against Chief Colon by Plaintiff Orff; (6) false light against Defendant Colon by Plaintiff Orff; (7) defamation against Chief Colon by Plaintiff Orff; (8) sexual battery against Defendant Smithson by Plaintiff Orff; and (9) battery against Defendant Smithson by Plaintiff Orff. (*FAC* [Doc. 13].)

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.

3

Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."  Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences.  See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

### B.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id.  "Public officials are immune from suit under 42 U.S.C. § 1983 unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.' "  City & Cnty. of San Francisco, Calif. v. Sheehan, 135

4

S. Ct. 1765, 1774 (2015).  "In other words, [qualified] immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " <u>White v. Pauly</u>, 137 S. Ct. 548, 551 (2017) (quoting <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015)) (internal quotation omitted).

"Qualified immunity is 'an immunity from suit rather than a mere defense to liability.' " <u>Pearson</u>, 555 U.S. at 237 (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).  As such, " 'it is effectively lost if a case is erroneously permitted to go to trial.' " <u>Id.</u> at 231 (quoting <u>Mitchell</u>, 472 U.S. at 526).  "Indeed, [the Supreme Court has] made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims against government officials be resolved prior to discovery.' " <u>Id.</u> (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 n.2 (1983)).  "Accordingly, '[the Supreme Court has] repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' " <u>Id.</u> (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)).

In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court mandated a two-step procedure for analyzing the qualified immunity defense.  First, the court was to decide whether the facts that a plaintiff has alleged made out a violation of a constitutional right, and second if so, the court was to decide whether the right was clearly established at the time.  <u>See Pearson</u>, 555 U.S. at 232 (referencing <u>Saucier</u>, 533 U.S. at 201).  The Supreme Court later rejected rigid, mandatory adherence to this approach in <u>Pearson</u>.  533 U.S. at 237–42.  The <u>Pearson</u> Court emphasized flexibility, especially when qualified immunity is asserted early in litigation—noting that "when qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify," 555 U.S. at 238–39, and that "[t]here are circumstances in which the first step of the Saucier procedure may create a risk of bad decisionmaking."  <u>Id.</u> at 239.  In short, sometimes it is better to reach the issue of whether any right that does exist is clearly established before reaching the question of whether the right exists in the first place.  <u>See id.</u>  This is consistent with "the general rule of constitutional avoidance"—avoiding

5

constitutional questions if there is another way of deciding a case.  See id. at 241.

Notably, the Court emphasized that "Saucier's two-step protocol 'disserve[s] the purpose

of qualified immunity' when it 'forces the parties to endure additional burdens of suit—

such as the costs of litigating constitutional questions and delays attributable to resolving

them—when the suit otherwise could be disposed of more readily.' " Id. at 237 (quoting

Brief for National Association of Criminal Defense Lawyers as Amicus Curiae 30).

In order to overcome qualified immunity at the pleading stage, a plaintiff must

plead facts to overcome both prongs of the immunity: " '(1) that the official violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at the time

of the challenged conduct.' " See Wood v. Moss, 134 S. Ct. 2056, 2066–67 (2014)

(quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).  However, in the Ninth Circuit,

"[w]hen . . . defendants assert qualified immunity in a motion to dismiss under Rule

12(b)(6), 'dismissal is not appropriate unless [the Court] can determine, based on the

complaint itself, that qualified immunity applies.' " O'Brien v. Welty, 818 F.3d 920, 936

(9th Cir. 2016) (quoting Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001)).

## III.    DISCUSSION

### A.    42 U.S.C. § 1983 Against Chief Colon

#### 1.    Plaintiff Adequately Alleges a Theory of Discrimination.

First, Defendants contend that "Orff continues to assert the same equal protection

claim set forth in the original complaint, based upon identical factual allegations, even

though the court ruled those allegations did 'not allege a viable claim as to how Chief

Colon's alleged interference with either the investigation or the prosecution of Detective

Orff's case amounts to a constitutional violation.' " (Defs.' Mot. [Doc. 14-1] 3:2–6

(quoting June 12, 2017 Order [Doc. 12].)

In fact, the Court's previous order merely noted that the original Complaint did not

allege a discrimination theory.  (See June 12, 2017 Order [Doc. 12] 8:9–9:14.)  The FAC

corrected this deficiency.  (FAC [Doc. 13] ¶ 32 ("Officer Defendants deprived Detective

Orff of her right to freedom from the discriminatory denial of police services when they interfered with the prosecution of Detective Orff's sexual assault because of her sexual orientation.").)

Defendants' motion does not explain how the facts alleged in the FAC might be insufficient to support such a theory. (*See Defs.' Mot.* [Doc. 14-1] 3:1–12.) Rather, it seems to evince a misreading of the Court's previous order as requiring more facts than were alleged in the previous Complaint. No such condition was implicit in the previous order, and Defendants provide no reasoning as to why the pleading standard would require more. See Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570 (summarizing the relevant pleading standards).

Defendants' motion to dismiss the first cause of action on this ground will be denied.

**2.     The Facts Alleged in the Complaint Are Sufficient to Overcome Qualified Immunity at this Stage.**

Defendants contend that Chief Colon is entitled to qualified immunity based on the facts alleged in the FAC, on the ground that no clearly established right to privacy existed to preclude him from sharing the intimate details of a sexual assault with the supervisors of both the victim and the victim's spouse. (*Defs.' Mot.* [Doc. 14-1] 3:13–10:4.)

In Whalen v. Roe, the Supreme Court recognized "the individual interest in avoiding disclosure of personal matters[.]" 429 U.S. 589, 599 (1977). It quoted Justice Brandeis in his recognition of " 'the right to be let alone' as 'the right most valued by civilized men[.]' " Id. at 599 n.25 (quoting Olmstead v. United States, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting)); accord Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 457 (1977). "While the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional 'zone of privacy,' its existence is firmly established." In re

7

Crawford, 194 F.3d 954, 958 (9th Cir. 1999) (quoting Whalen, 429 U.S. at 598). The privacy of sexual activities is constitutionally protected. See Thorne v. City of El Segundo, 726 F.2d 459, 468 (9th Cir. 1983). "This conclusion follows from the cases holding that such basic matters as contraception, abortion, marriage, and family life are protected by the constitution from unwarranted government intrusion." Id. (referencing Kelly v. Johnson, 425 U.S. 238, 244 (1970); Roe v. Wade, 410 U.S. 113, 153 (1973); Eisenstadt v. Baird, 405 U.S. 438 (1972); Griswold v. Connecticut, 381 U.S. 479 (1965)).

Defendants cite to NASA v. Nelson, 562 U.S. 134 (2011), for the proposition that the "Supreme Court and Ninth Circuit authority demonstrates 'that the constitutional right of information privacy is murky, at best.' " (Defs.' Mot. [Doc. 14-1] 5:18–6:2 (quoting O'Phelan v. Loy, 2011 WL 719053, at *11 (D. Haw. Feb. 18, 2011).) At least as it applies here, this is not an accurate assessment of the relevant law.

In NASA, the Court reversed an order of the Ninth Circuit granting temporary injunctive relief in favor of a group of contract employees of the Jet Propulsion Laboratory. 562 U.S. at 134. These employees had moved for a preliminary injunction to protect them from a requirement that they complete a questionnaire that delved into recent illegal drug use, and that required them to sign a release authorizing the government to obtain personal information from schools, employers, landlords, and other references. Id. In a fourteen-page opinion, the Court left Whalen undisturbed and used its approach—assuming without deciding "that the challenged inquiries implicate[d] a privacy interest of constitutional significance." See id. at 147.

In analyzing NASA, the Supreme Court's last and most salient word on informational privacy, it is critical to first note what the Court did not do. It did not overrule Whalen or Nixon. See 562 U.S. at 134. On the contrary, it left their precedent standing, and it even explicitly adopted Whalen's methodology. See 562 U.S. at 147 ("As was our approach in Whalen, we will assume for present purposes that the Government's challenged inquiries implicate a privacy interest of constitutional significance."). See NASA, 562 U.S. at 145–147, 147 n.10. This precedent assumed the

existence of a right to privacy.  See Whalen, 429 U.S. at 599 ("The cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests . . . . One is the individual interest in avoiding disclosure of personal matters.").

> **Professor Kurland has written: "The concept of a constitutional right of privacy still remains largely undefined. There are at least three facets that have been partially revealed, but their form and shape remain to be fully ascertained. The first is the right of the individual to be free in his private affairs from governmental surveillance and intrusion. The second is the right of an individual not to have his private affairs made public by the government. The third is the right of an individual to be free in action, thought, experience, and belief from governmental compulsion."**

Id. at 599 n.24.  Indeed, the NASA Court's majority opinion rejected the approach of a vigorous dissent by Justice Scalia, which would have held that "there is no constitutional right to 'informational privacy.' "  See id. at 162, 147 n.10 ("There are sound reasons for eschewing the concurring opinions' recommended course.").

Defendants draw the Court's attention to Justice Scalia's dissent, arguing that the NASA Court "expressly declined to consider the scope of [the privacy] right." (*Defs.' Mot.* [Doc. 14] 5:7–10.)  This is true insofar as the NASA Court did not explicitly delineate the scope of the right.  However, neither did it embrace the alternative approach.  Whelan and Nixon are still good law.  There would have been no need for the complex, fact-intensive analysis embraced by the majority if no right existed.

Three points are most notable in the NASA analysis.  First, the Court focused on the context of governmental privacy concerns, distinguishing those that arise in the situation of government employment from those that arise when the government deals with ordinary citizenry.  Id. at 148.  In short, "the [g]overnment has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.' "  Id. (quoting Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 598 (2008)).  Second, the Court eschewed any test of necessity or "least restrictive means" for job-related government privacy concerns, instead embracing an approach that resembled a common-sense reasonableness inquiry.  See id. at 147–55 (using some variant of the word "reasonable" no fewer than thirteen times).  Third and finally, the

9

Court emphasized the protections against public disclosure of the information offered to the government as an employer, or in the course of employment-related investigations. See id. at 155–59 ("Not only are [the relevant forms] reasonable in light of the Government interests at stake, they are also subject to substantial protections against disclosure to the public.").

The use of such a subtle and nuanced analysis points a sharp contrast between the majority opinion in NASA, and the dissent—which would have found a total lack of any constitutional right to informational privacy. See 562 U.S at 162 (Scalia, J., dissenting). To read the existence of such a right as "murky, at best[,]" (Defs.' Mot. [Doc. 14-1] 5:5:18–6:2 (quoting O'Phelan v. Loy, 2011 WL 719053, at *11 (D. Haw. Feb. 18, 2011)) —even in a case involving a malicious public disclosure of intimate details in a sexual assault investigation—would be to ignore the analysis behind the NASA decision, and to fixate on any ambiguity implied by the Court's reliance on precedent at the outset.

Applying the NASA Court's analytical framework to the allegations of this case, the operation of a constitutional right to privacy here is clear. First, this case does not involve a government employer, but rather law enforcement—the quintessential case of government " '[bringing] its sovereign power to bear on citizens at large.' " NASA, 562 U.S. at 148 (quoting Engquist, 553 U.S. at 598). According to the FAC,[1] Chief Colon used his authority in the Imperial Police Department—and the private information that came along with it—as a means by which to embarrass and intimidate a sexual assault victim through targeted disclosures directed at the victim's supervisor and that of her wife. (See FAC [Doc. 13] ¶¶ 22–24.) Second, such disclosures are the antithesis of reasonable—especially considering that: (1) Chief Colon is alleged to have "blamed Orff for being victimized" to her supervisor; and (2) that his alleged disclosure to Orff's wife's supervisor directly followed her wife's contact with the department to check on the status

---

[1] The Court must assume true the FAC's factual allegations at this stage of the proceedings. Iqbal, 556 U.S. at 678

of the investigation—thus giving rise to an inference of retaliatory animus. (*Id.*) Third, this disclosure was made to members of the public outside of Chief Colon's department, precluding safeguards to prevent further dissemination.

Implicit in the Supreme Court's <u>NASA</u> decision is that the factors discussed are necessary to trigger a constitutional right to informational privacy. <u>See</u> 562 U.S. at 148–155. But as to sufficiency, whereas the facts of <u>NASA</u> and <u>Whalen</u> were beyond the outer bounds of the right, the facts alleged here place this case firmly within its contours. Beyond what is analyzed above, there is the simple fact that this case involves the malicious disclosure of the intimate details of a sexual crime.

Ninth Circuit law is clear that the Constitution protects the privacy of one's sexual activities. <u>See</u> <u>Thorne</u>, 726 F.2d at 468. The <u>NASA</u> Court chose to leave this precedent undisturbed, which the appellate panel below had explicitly referenced. <u>Nelson v. Nat'l Aeronautics & Space Admin.</u>, 530 F.3d 865, 877 (9th Cir. 2008), *rev'd and remanded*, 562 U.S. 134 (2011) ("This interest covers a wide range of personal matters, including sexual activity[.]") (citing <u>Thorne</u>, 726 F.2d at 459). This, despite the fact that the government's investigations of the JPL contract employees in <u>NASA</u> asked open-ended questions that could conceivably have revealed nearly any personal material about those employees—including private material of an intimate nature. <u>See</u> 562 U.S. at 154 ("Form 42 asks applicants' designated references and landlords for 'information' bearing on 'suitability for government employment or a security clearance.' . . . In a series of questions, the government asks if the reference has any 'adverse information' about the applicant's 'honesty or trustworthiness,' 'violations of the law' 'financial integrity,' 'abuse of alcohol and/or drugs,' 'mental or emotional stability,' 'general behavior or conduct,' or 'other matters.' . . . .").

//
//
//
//

11

As referenced in the Court's June 12, 2017 order, "[t]he desire to shield one's unclothed figured from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." (*June 12, 2017 Order* [Doc. 12] 9:28–10:2 (quoting York v. Story, 324 F.2d 450, 455 (9th Cir. 1963).)

> **[A] historic social stigma has attached to victims of sexual violence. In particular, a tradition of "blaming the victim" of sexual violence sets these victims apart from those of other violent crimes. Releasing the intimate details of rape will therefore not only dissect a particularly painful sexual experience, but often will subject a victim to criticism and scrutiny concerning her sexuality and personal choices regarding sex.**

Bloch v. Ribar, 156 F.3d 673, 685 (6th Cir. 1998).  Here, the FAC alleges that law enforcement tasked with investigating a sexual crime instead maliciously disclosed details of that crime to those with power over the employment of both the victim and her family.  If the constitutional right to informational privacy the Supreme Court discussed in Whalen, Nixon, and NASA has any meaning at all, it applies clearly in these circumstances.

Defendants' motion to dismiss the first cause of action on the basis of qualified immunity will be denied.


**B.     42 U.S.C. § 1983 and Municipal Liability**

Defendants move to dismiss Plaintiffs' cause of action for violation of 42 U.S.C. § 1983 on the grounds that: (1) Chief Colon's ratification of the Doe Officer's conduct cannot serve as the basis for liability because no factual allegations appear in the complaint that are sufficient enough to give rise to an inference of liability as to those Doe Officers; and (2) Chief Colon is not a final policymaker of the city as to his own actions.  (*Defs.' Mot.* [Doc. 14-1] 10:5–12:12.)

//

//

//

//

### 1.    Ratification of Doe Defendants' Actions

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.  The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986).  The Monell Court reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered.  Id. at 480 (formatting altered from original).

Plaintiff alleges that "Defendants City of Imperial and imperial Police Department [are] liable for Officer Defendants' unconstitutional deprivation of Detective Orff's rights to Equal protection and privacy because Defendant Chief Colon himself perpetrated and ratified said deprivation."  (FAC [Doc. 13] ¶ 38.)  The only "Officer Defendants" appearing in the FAC are Doe Defendants.  (Id. [Doc. 13].)  And no clear factual allegations appear as to what these Doe Defendants did or did not do that Chief Colon allegedly ratified.[2]  Defendants are entitled to "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The facts alleged must "raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555. The Court will not speculate as to what serves as the basis for this claim, and it will not require Defendants to do so either.

---

[2] Without more, allegations as to the Imperial Police Department's conduct in investigating this matter generally (see FAC [Doc. 13] ¶¶ 19, 21, 26) are not sufficient for the Court to infer Chief Colon's ratification of Doe Defendants' conduct.  In short, it is not clear what conduct Chief Colon is alleged to have ratified.

## 2.     Chief Colon as an Official Policymaker

"[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Id.  This includes "officials 'whose acts or edicts may fairly be said to represent official policy,' Monell, supra, 436 U.S. at 694, and whose decisions therefore may give rise to municipal liability under § 1983." Id. (formatting altered from original).  However, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." Pembaur, 475 U.S. at 481.  "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Id.  "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id. at 481–82.  "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." Id. at 482–83.  "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." Id. at 483.  "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id.

Plaintiffs allege:

> **39. Defendant Chief Colon is an official policymaker for Defendant City of Imperial and Imperial Police Department.**

> **40. Accordingly, based upon the principles set forth in [Monell], Defendants City of Imperial and IPD are liable for all of the injuries sustained by Detective Orff as set forth above.**

(*FAC* [Doc. 13] ¶¶ 39–40.)  This cause of action incorporates the previous 36 paragraphs of the FAC, which include allegations relating to the Imperial Police Department's interviewing policies (*id.* [Doc. 13] ¶ 17), arresting policies (*id.* [Doc. 13] ¶ 18), evidence

14

gathering policies (*id.* [Doc. 13] ¶ 19), policy as to referring this particular matter to the District Attorney (*id.* [Doc. 13] ¶¶ 21, 25–27 (alleging that Chief Colon actively interfered in this regard)), in addition to allegations about Chief Colon's calling Plaintiff Orff's supervisor and also that of her wife.  (*Id.* [Doc. 13] ¶¶ 22–23, 24.)

Plaintiffs do not allege which policies form the basis for their cause of action, or how any of these policies might have caused the alleged harms.  (*Id.* [Doc. 13] ¶ 41 (claiming damages for "embarrassment, emotional distress, and harm to reputation").) Defendants are entitled to know which policies Chief Colon is alleged to have put in place so that they may defend themselves without speculation.  <u>See</u> Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief."); <u>see also</u> <u>Twombly</u>, 550 U.S. at 555 (requiring factual allegations "to raise a right to relief above the speculative level[.]").

Defendants' motion to dismiss the second cause of action will be granted with leave to amend.

### C.  § 821.6 Immunity and Law of the Case

Defendants move to dismiss parts of the third and fourth causes of action that are premised on Chief Colon's alleged interference with the Orff investigation.  (*Defs.' Mot.* [Doc. 14-1] 12:13–13:1.)

//
//
//
//
//
//
//
//
//

As the Court found in its June 12, 2017 Order:

> "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6. "Government tort immunity is jurisdictional[.]" Richardson-Tunnell v. Sch. Ins. Program for Employees (SIPE), 157 Cal. App. 4th 1056, 1061 (2007). "Section 821.6 immunity applies only to conduct within the scope of employment. An employee is acting in the course and scope of his employment when he is engaged in work he was employed to perform, or when the act is incident to his duty and is performed for the benefit of his employer, not to serve his own purposes or convenience." Id. at 1062. " 'California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits.' " Id. (quoting Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1048 (2007)).
>
> "[S]ection 821.6 is not limited to suits for damages for malicious prosecution, although that is a principal use of the statute." Kayfetz v. State of California, 156 Cal. App. 3d 491, 497 (1984). " '[T]he test of immunity is not the timing of the publication [of allegedly defamatory statements] but whether there is a causal relationship between the publication and the prosecution process. If the making and publication of . . . statements were part of the process, they [are] protected by the immunity in section 821.6.' " Ciampi v. City of Palo Alto, 790 F. Supp. 2d 1077, 1108–09 (N.D. Cal. 2011) (quoting Ingram v. Flippo, 74 Cal. App. 4th 1280, 1292–93 (1999)). "Under California law the immunity statute is given an 'expansive interpretation' in order to best further the rationale of the immunity, that is to allow the free exercise of the prosecutor's discretion and protect public officers from harassment in the performance of their duties." Ingram, 74 Cal. App. 4th at 1292 (internal quotation omitted).

(*June 12, 2017 Order* [Doc. 12] 16:12–17:8.) Because of the application of § 821.6 in this case, the Court held that Chief Colon is immune from state-law tort liability resulting from his alleged interference with the Orff investigation. (*Id.* [Doc. 12] 17:19–24.) This is now the law of the case. See, e.g., United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).

In the FAC, Plaintiffs now once again bring two state-law tort causes of action based, in part, on Chief Colon's alleged interference with the Orff investigation. (*FAC* [Doc. 13] ¶¶ 44, 52.) The language in these paragraphs is virtually identical to that appearing in one of the dismissed claims from the original complaint. (*Compare id.* [Doc. 13] ¶¶ 44, 52; *with Compl.* [Doc. 1] ¶ 53.) Plaintiffs' opposition provides no justification for their lack of compliance with the Court's prior order. (*Pls.' Opp'n* [Doc.

16

17] 9:1–10:20.)  Rather, it attempts to relitigate the same issue that has already been decided.  This is improper.  See Alexander, 106 F.3d at 876 (" '[A] court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.' ") (quoting Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993), *cert denied*, 508 U.S. 951 (1993)).  "A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result."  Id.  None of these factors apply.

Defendants' motion to dismiss claims within the third and fourth causes of action relating to Chief Colon's alleged interference with the Orff investigation will be granted without leave to amend.[3]

### D.    Public Disclosure of Private Facts, and False Light

Defendants move to dismiss the fifth and sixth causes of action, for public disclosure of private facts and false light, respectively, on the ground that the FAC does not allege the requisite publicity.  (*Defs.' Mot.* [Doc. 14-1] 13:2–14:2.)

The elements of the tort of public disclosure of private facts are: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern."  Shulman v. Grp. W Prods., Inc., 18 Cal. 4th 200, 214 (1998), *as modified on denial of reh'g* (July 29, 1998).  "[C]ommon law invasion of privacy by public disclosure of private facts requires that the actionable disclosure be widely published and not confined to a few persons or limited circumstances."  Hill v. National Collegiate Athletic Assn., 7 Cal. 4th 1, 27 (1994) (citing Rest. 2d Torts, § 652D, Comment a).

---

[3] The law of the case precludes these claims.  Amendment would be futile.  See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).

17-CV-0116 W (AGS)

> **"Publicity," as it is used in [Section 652D], differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written, or by any other means. It is one of a communication that reaches that reaches, or is sure to reach, the public.**
>
> **Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.**

Rest. 2d Torts, § 652D, Comment a. "[E]xcept in cases involving physical intrusion, the tort [of public disclosure of private facts] must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished by one individual or a few." Kinsey v. Macur, 107 Cal. App. 3d 265, 270 (1980).

" 'False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed.' " Jackson v. Mayweather, 10 Cal. App. 5th 1240, 1264 (Ct. App. 2017), as modified (Apr. 19, 2017), review denied (June 28, 2017) (quoting Price v. Operating Engineers Local Union No. 3, 195 Cal.App.4th 962, 970 (2011)). "On what constitutes publicity and the publicity of application to a simple disclosure, see § 652D, Comment *a*, which is applicable to the rule stated here[, defining the tort of false light]." Rest. 2d Torts, § 652E, Comment a.

In short, both the tort of public disclosure of private facts and the tort of false light require publicity—communication of a fact in such a manner as to either make it public,

or sure to reach the public.[4] <u>Hill</u>, 7 Cal. 4th at 27; Rest. 2d Torts, § 652D, Comment a (public disclosure of private facts); <u>Jackson</u>, 10 Cal. App. 5th at 1264; Rest. 2d Torts, § 652E, Comment a.

As to public disclosure of private facts, the FAC alleges, "Defendant Chief Colon publicized private information concerning Plaintiff Orff by disclosing the details of the sexual assault to which Plaintiff Orff was subjected to her employer and to the employer of her spouse." (*FAC* [Doc. 13] ¶ 58.) As to false light, the FAC alleges, "Defendant Chief Colon painted Detective Orff as an immoral and sexually deviant individual who was responsible for the attack that she suffered when he made his improper disclosures of the details of the sexual assault to which she was subjected to Detective Orff's employer and to the employer of her spouse." (*Id.* [Doc. 13] ¶ 65.) Both claims allege a disclosure to only two individuals.

Plaintiffs do not contest that both causes of action require an element of publicity. (*See Pls.' Opp'n* [Doc. 17] 11:12 ("[B]oth of these claims involve an element of public disclosure.") Rather, they contest the definition of publicity, arguing that the malice alleged in Chief Colon's actions should loosen the requirement that public disclosure be "widely published and not confined to a few persons or limited circumstances." <u>Hill</u>, 7 Cal. 4th at 27.

There is some language in the <u>Kinsey</u> decision to lend credence to this idea. <u>See</u> 107 Cal. App. 3d at 271–72 (distinguishing <u>Porten v. University of San Francisco</u>, 64 Cal. App. 3d 825 (1976) and <u>Timperly v. Chase Collection Service</u>, 272 Cal. App. 2d 697 (1969), on the basis that "[i]n both cases, communication was to a single recipient for a specific, *nonmalicious* purpose." (emphasis added)) Also:

//

---

[4] Plaintiffs' opposition does not contest this point—instead choosing to focus on the definition of publicity. (Pls.' Opp'n [Doc. 17] 11:12 ("[B]oth of these claims involve an element of public disclosure.")

**As the Supreme Court noted: "Men fear exposure not only to those closest to them; much of the outrage underlying the asserted right to privacy is a reaction to exposure to persons known only through business or other secondary relationships. The claim is not so much one of total secrecy as it is the right to *define* one's circle of intimacy . . . ."**

Id. at 272 (quoting Briscoe v. Reader's Digest Association, Inc., 4 Cal. 3d 529, 534 (1971), *overruled by* Gates v. Discovery Communications, Inc., 34 Cal. 4th 679 (2004)). However, since Kinsey was decided in 1980, the California Supreme Court has adopted the Restatement's definition of publicity, requiring that the relevant material "be widely published and not confined to a few persons or limited circumstances." Hill, 7 Cal. 4th at 27 (referencing Rest. 2d Torts, § 652D, Comment a). According to the Restatement, " 'Publicity[]' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Rest. 2d Torts, § 652D, Comment a.

No matter how malicious the disclosures in this case are alleged to have been, the Court is bound to follow the California Supreme Court's adoption of the Restatement's rule in this area of law. See Hill, 7 Cal. 4th at 27 (citing Rest. 2d Torts, § 652D, Comment a); Rest. 2d Torts, § 652E, Comment a. Per the definition adopted by this state's highest court, disclosure limited in scope to two individuals is not "a communication that reaches, or is sure to reach, the public." See Rest. 2d Torts, § 652D, Comment a. Rather, it is "confined to a few persons or limited circumstances." Hill, 7 Cal. 4th at 27. This does not constitute publicity.

Defendants' motion to dismiss the fifth and sixth causes of action, for public disclosure of private facts and false light, respectively, will be granted without leave to amend.[5]

//

//

---

[5] These causes of action are legally deficient, and amendment would "constitute an exercise in futility." DCD Programs, 833 F.2d at 186 (9th Cir. 1987).

## IV.   CONCLUSION & ORDER

Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  [Doc. 14.]

Specifically:

Defendants' motion to dismiss the first cause of action is denied.

Defendants' motion to dismiss the second cause of action is granted with leave to amend.

Defendants' motion to dismiss claims within the third and fourth causes of action relating to Chief Colon's alleged interference with the Orff investigation is granted without leave to amend.

Defendants' motion to dismiss the fifth and sixth causes of action, for public disclosure of private facts and false light, respectively, is granted without leave to amend.

Plaintiffs will have leave to amend consistent with the terms of this order.[6]  Any amended pleading must be filed on or before **Friday, December 1, 2017**.


**IT IS SO ORDERED.**


Dated:  November 17, 2017

_____
Hon. Thomas J. Whelan
United States District Judge

---

[6] "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

17-CV-0116 W (AGS)